UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL L. WALLS | Case No. 12-11874 |
| Plaintiff, | Stephen J. Murphy, III |
| v. | United States District Judge |
| LYNETTE O'CONNOR, *et al.*, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendants. | |

_____/

## REPORT AND RECOMMENDATION
## MOTION TO DISMISS (Dkt. 9)

### I.   PROCEDURAL HISTORY

Plaintiff was a prisoner in the custody of the Michigan Department of Corrections at the time he filed this *pro se* civil rights complaint on April 26, 2012.  (Dkt. 1).  Defendant Richard Dase, RN, filed a motion to dismiss the complaint on June 14, 2012.  (Dkt. 9).  This motion was referred to the undersigned for report and recommendation by District Judge Stephen J. Murphy, III.  (Dkt. 11).  Plaintiff filed his response on August 7, 2012.  (Dkt. 17).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant Dase's motion to dismiss should be **GRANTED**.

## II.    FACTUAL BACKGROUND

Defendant, Richard Dase is a Registered Nurse at Parnall Correctional Facility (SMT).  Plaintiff alleges that on August 4, 2011, Nurse Practitioner Lynette O'Connor ordered R.N. Dase to take away plaintiff's walker and issue him a cane.  On November 11, 2011 plaintiff's "drop foot folded" and he injured his ankle.  (Dkt. 1, Pg ID 3).  Plaintiff has filed one Step III grievance appeal while incarcerated at SMT.  (Dkt. 9, Exhibit B).  In Grievance SMT-11-11-1548-12d1, plaintiff complained that Nurse Practitioner O'Connor denied his request for an AFO leg brace "when she took [his] walker and placed [him] on the walking cane."  (Dkt. 1, Pg ID 6). This grievance was addressed on the merits at Step I and II of the MDOC grievance procedure, but denied at Step III as having been initially untimely filed.  That is, while the Step III grievance itself was timely filed under the grievance procedure, it was noted that the initial grievance was not timely filed because plaintiff had failed to attempt to timely resolve the grievance informally within two days of the incident complained of and because he had failed to file the grievance within five days of the attempt to informally resolve the complaint.

## III.    ANALYSIS AND CONCLUSION

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted).  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified

Report and Recommendation
Motion to Dismiss
*Walls v. O'Connor*; Case No. 12-11874

*Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted).  The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2).  Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Thus, it is permissible to

consider, in the context of a motion to dismiss, documents such as the grievances and grievance responses attached to the complaint. *See Havenick v. Network Exp., Inc.*, 981 F.Supp 480 (E.D. Mich. 1997) ("the Court may properly consider, for the purposes of a Motion under Fed.R.Civ.P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the Motion into one for Summary Judgment."); *Greenberg v. Life Insurance Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss."). In the analysis below, the undersigned has not considered the additional documentation provided by defendant in his motion to dismiss, thus, defendant's alternative motion for summary judgment need not be considered.

B.   Exhaustion of Administrative Remedies

1.   Legal Principles

Defendant moves to dismiss the claims against him for failure to exhaust administrative grievance remedies. In *Jones v. Bock*, 549 U.S. 199 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. Moreover,

the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *See Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1997e(a) must exhaust his available administrative

remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*,

532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative

remedies, even if the prisoner may not be able to obtain the specific type of relief

he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*,

532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000);

*Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly

exhaust administrative remedies, prisoners must complete the administrative

review process in accordance with the deadlines and other applicable procedural

rules.  *See Jones*, 549 U.S. at 217-18; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006).  "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the

applicable grievance procedures for prisoners in MDOC custody at the time

relevant to this complaint.  Inmates must first attempt to resolve a problem orally

within two business days of becoming aware of the grievable issue, unless

prevented by circumstances beyond his or her control.  (Dkt. 9-2 at ¶ P).  If oral

resolution is unsuccessful, the inmate may proceed to Step I of the grievance

process and submit a completed grievance form within five business days of the

attempted oral resolution.  *Id*. at ¶ P.  The Policy Directive also provides the

following directions for completing grievance forms:  "The issues shall be stated

briefly.  Information provided shall be limited to the *facts* involving the issue

being grieved (i.e., who, what, when, where, why, how).  *Id.* at ¶ R.  Dates, times,

places and names of all those involved in the issue being grieved are to be

included."  *Id.* at ¶ R (emphasis in original).  The inmate submits the grievance to

a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a

timely response, he may appeal to Step II by obtaining an appeal form within

ten business days of the response, or if no response was received, within ten days

after the response was due.  *Id.* at ¶¶ T, DD.  The respondent at Step II is

designated by the policy, e.g., the regional health administrator for medical care

grievances.  *Id.* at ¶ GG.  If the inmate is still dissatisfied with the Step II response,

or does not receive a timely Step II response, he may appeal to Step III.  *Id.* at ¶

FF.  The Step III form shall be sent within ten business days after receiving the

Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due.  *Id.* at ¶ FF.  The Grievance and

Appeals Section is the respondent for Step III grievances on behalf of the MDOC

director.  *Id.* at ¶ GG.  Time limitations shall be adhered to by the inmate and staff

at all steps of the grievance process.  *Id.* at ¶ X.  "The total grievance process from

the point of filing a Step I grievance to providing a Step III response shall be

completed within 90 calendar days unless an extension has been approved ... ."  *Id.*

Report and Recommendation
Motion to Dismiss
*Walls v. O'Connor*; Case No. 12-11874

at ¶ HH.

### 2.   Purpose of Exhaustion Requirement

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 89.  The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93, quoting, *Porter*, 534 U.S. at 525 (alteration omitted). Exhaustion serves a dual purpose:  it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94.  Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 915-16.

C.      Analysis

Defendant argues that nowhere in this grievance does plaintiff name R.N.

Dase despite the requirement that the names of all those involved in the issue

being grieved are to be included.  (Dkt. 9-2, Exhibit A at ¶ R).  Accordingly,

defendant argues that plaintiff has failed to exhaust his available administrative

remedies concerning his claim against R.N. Dase.  In addition, defendant asserts

that plaintiff's Step III grievance appeal was rejected as "untimely under policy."

(Dkt. 1, Pg ID 8).  And, therefore, defendant contends that even if R.N. Dase had

been named in the grievance, this grievance would not have exhausted any of

plaintiff's complaint allegations because he failed to properly adhere to the time

restrictions under MDOC's grievance policy.  In response, plaintiff contends that

because his grievance identifies "healthcare" and Dase works for healthcare, that

the grievance is exhausted as against Dase.

While plaintiff's complaint and response to the motion to dismiss contained

a multitude of detailed allegations against Dase, he is not mentioned in the initial

grievance.  Plaintiff correctly points out that a grievance against "healthcare"

generally may not always preclude the identification of individuals in a § 1983

complaint.  *See e.g. Abbruzzino v. Hutchinson*, 2009 WL 799245 (E.D. Mich.

2009) (Where grievance addressed on the merits, not rejected as unduly vague for

failure to identify any particular individuals, and grieved only "health care staff,"

exhaustion was proper as to all health care staff.").

In this case, however, plaintiff describes in detail at all three steps of the grievance process that O'Connor "refused to make the necessary arrangements needed to order" a left ankle brace for his drop foot. (Dkt. 1, Pg ID 4). Additionally, in the Step I grievance, plaintiff wrote: "during my Chronic Care review in August with Ms. Lynette O'Connor she took my handicap walker and gave me a walking cane and I immediately informed her of the fact that I suffer from paralysis and I have very bad drop foot and without the help of an ankle brace for my left foot, it may cause an accident. And on 11/17/11 while walking my left ankle folded which caused injury do [sic] to healthcares [sic] negligents [sic] in failure to provide the much needed ankle brace for my left leg drop foot." *Id.* Dase conducted the Step I investigation and interviewed both plaintiff and O'Connor. As a result of the grievance and investigation, NP O'Connor agreed that plaintiff should have a foot brace and it was approved and ordered. (Dkt. 1, Pg ID 5). In his Step II appeal, plaintiff wrote:

> Because NP O'Connor failed to honor my request for the
> very much needed AFO leg brace during my chronic care
> review on 8/4/11 when she took my walker and placed
> me on the walking cane and her negligent decision
> placed in a dangerous situation that did cause me injury
> to my left foot and ankle therefore the SMT Healthcare
> and NP O'Connor must be held accountable for my
> Injury and continuous pain and suffering to this very day
> to my leg that was caused on 11/17/11 by not providing

an AFO leg brace during that time which I was denied on
3/4/11 and 8/13/11 also several other dates that I did not
record upon request.

(Dkt. 1, Pg ID 6).  And, in his Step III appeal, plaintiff wrote:

> Because NP O'Connor refused to order the AFO ankle
> brace for my drop foot on 8/4/11 and 8/13/11 as stated in
> Step I and II would have surely prevented the injury to
> my left ankle on 11/17/11 a full three months later after I
> made the requet [sic] to her, and stating the seriousness
> of the need for the AFO Brace to her and therefore the
> errored [sic] date that I put a circle around on the step II
> response from RN Laura Kinder has no merit because
> 11/17/11 was the injury date which was an emergency
> visit and not an appointment as stated in the response.

(Dkt. 1, Pg ID 6).

In contrast, plaintiff's complaint asserts that on 8/4/11 during his Chronic

Care review, NP O'Connor

> ordered nurse Richard W. Dase to take my handicap
> walker away and to issue me a cane and I told her
> immediately that I would need an AFO ankle brace for
> my left drop foot to prevent any accidents, she refused to
> put in an order for the brace and on 11/17/11 my drop
> foot folded and this caused a serious fracture to my left
> ankle.  On 11/18/11, I was transported to DeWayne
> Waters Hosp.  The brace was also requested on 8/13/11
> and she refused me once again.

(Dkt. 1, Pg ID 3).  In his response to the motion to dismiss, plaintiff also asserts

that "[d]uring a grievance review with R.N. Dase I asked him to make the

necessary arrangements needed so I could see my x-ray chart for my left ankle and

foot area because I was still suffering from extreme pain and swelling but he refused and my response was that all parties involved in making negligent decision would be held accountable..." (Dkt. 17, Pg ID 94).  Plaintiff offers no explanation as to why, if Dase was so involved in the events giving rise to his grievance, he was not mentioned in the initial grievance or any of the subsequent appeals.  It appears that plaintiff was aware of his identity and there was no mention of a particular person being involved whose identity was unknown.  And, plaintiff's references to "healthcare" seemed more aimed at his assertion that "healthcare" is responsible and liable for the actions of NP O'Connor.

In the view of the undersigned, plaintiff's claims against Dase are not exhausted because plaintiff, despite given three detailed accounts in his initial grievance and subsequent appeals, never mentioned the alleged role of Dase. While plaintiff mentioned "healthcare" generally, his complaints were very specific in identifying the alleged wrongdoer (O'Connor) and he apparently was aware of the role that Dase played in events giving rise to his grievance.  Thus, the undersigned concludes that nothing in the grievance would have put the facility on notice that plaintiff's grievance involved any action or inaction by Dase and this case is entirely distinguishable from the facts in cases like *Abbruzzino*.  Further, plaintiff's complaints against Dase seem more focused on his role in assessing the grievance, than having anything to do with the underlying facts.  To the extent that

plaintiff seeks to bring a claim against Dase for his role in investigating and responding to the grievance, any such claim is misplaced. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (Where a defendant's "only role[] ... involve[s] the denial of administrative grievances or the failure to act ... [he] cannot be liable under § 1983.").

This case is very similar to *Vandiver v. Vasbinder*, 2012 WL 4355536, *1 (E.D. Mich. 2012), in which the court concluded that the plaintiff had failed to exhaust his administrative remedies as to a particular defendant not identified in the grievance because plaintiff had specifically identified other defendants by name and nothing in the grievance would have given notice as to the additional defendant. In addition, identifying "MDOC", "CMS", and the "State of Michigan" did not save the plaintiff's claim from being deemed unexhausted. Rather, the court concluded that "[e]ven the broadest readings of these grievances provides no basis affording notice that [the defendant's] involvement is at issue." *Id*. at *2. For these reasons, the undersigned concludes that defendant Dase's motion to dismiss based on plaintiff's failure to exhaust should be granted.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant Dase's motion to dismiss should be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Report and Recommendation
Motion to Dismiss
*Walls v. O'Connor*; Case No. 12-11874

Date: January 22, 2013                 s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 22, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kimberley A. Koester, Ronald W. Chapman, and Allan J. Soros, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): Daniel L. Walls, ID# 311781, 2017 Amherst Lane, Conyers, GA 30094.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Motion to Dismiss
*Walls v. O'Connor*; Case No. 12-11874